UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:21-cr-00013-GFVT-HAI-5 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KERI MCFARLANE, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Dr. McFarlane's Motion to Sever. [R. 692.] For the reasons that follow, the Motion **[R. 692]** is **DENIED**.

**I**

The indictment in this matter alleges that physicians at EHC improperly prescribed controlled substances and committed other related offenses from 2013-2018. [*See, e.g.*, R. 1 at 7.] Dr. McFarlane previously moved for severance from her co-defendants. [R. 403.] She had argued that statements she made to law enforcement presented Sixth Amendment concerns and raised antagonistic defenses between herself and her co-defendants, a risk of prejudicial spillover evidence, and discovery concerns. *See id.* at 1-2. The Court denied that Motion because it did not present a "compelling reason to depart from the strong preference for jointly trying co-defendants." [R. 503 at 17.]

On June 12, 2023, Dr. McFarlane proceeded to trial with her co-defendants Evann Herrell, Mark Grenkoski, and Stephen Cirelli. [R. 685.] Counsel for Dr. McFarlane renewed the Motion to Sever on the third day of trial. [*See* R. 690.] Dr. McFarlane argues that she is situated differently to her co-defendants because she left EHC in late 2016. [*See* R. 692.] Specifically,

she takes issue with application of policies and guidelines issued after 2016 to her conduct preceding that year. *Id.* The parties briefed the issue and the matter is now ripe for review. [R. 692; R. 695.]

## II

Co-defendants may be severed from one another and tried in separate proceedings where substantial prejudice will result from a joint trial. Fed. R. Crim. P. 14(a). The Supreme Court interpreted Rules 8 and 14 to allow severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Dr. McFarlane argues that this high bar is satisfied because of spillover evidence. [R. 692 at 5.]

Spillover evidence is evidence admitted against one defendant "that the jury should not consider against [another] defendant and that would not be admissible if [the other] defendant were tried alone." *Zafiro*, 506 U.S. at 539. This evidence can threaten a reliable judgment if admitted in a joint trial. *Id.* The mere existence of evidence that may have a spillover effect does not justify severance unless the defendant shows that it would prejudice her. *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985). Prejudice exists if the jury will be unable to "separate and treat [the evidence] distinctively." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987). A defendant must overcome the presumption that juries are "capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995).

Dr. McFarlane's renewed motion is based on testimony at trial "as to standards, procedures, guidelines, and protocols that were only in place after [she] left EHC . . ." [R. 692 at

2

2.] Government witnesses referenced a 2017 EHC policy and procedure manual, Tennessee's 2017 OBOT rules, TIP 63, and Benzodiazepine Rule 6.062. *Id.* at 2-3. Each of those materials were established after Dr. McFarlane left EHC in late 2016. She claims that the Government's use of these policies risks the jury determining her guilt by mere association with her co-defendants. *Id.* at 12. The Government argues that it is entitled to prove the entire scope of the conspiracy, post-2016 policies help establish the pre-existing generally accepted practices, and cross-examination and limiting instructions are available remedies. [R. 695 at 6-11.]

Severance is not warranted. First, the Government is not using the policies to show a *de facto* Controlled Substances Act violation. Dr. McFarlane's motion presumes that the Government's purpose in using these materials is to "show the objective standard [to] which these doctors would be held to for a 'legitimate medical purpose' and 'within the usual course of professional practice.'" [R. 692 at 3.] Put differently, she claims that the materials are being used "to establish the elements of the offense." *Id.* at 4.

In contrast, the Government is not arguing that failure to adhere to the post-2016 guidelines is itself a criminal violation. [R. 695 at 10-11.] Rather, these materials help establish the usual course of professional practice. The usual course of professional practice is not defined by clear lines provided in any particular materials. Many distinct pieces of evidence collectively establish that standard. *See, e.g.*, *United States v. Anderson*, 67 F.4th 755, 769 (6th Cir. 2023). The Government is using the post-2016 materials as one piece of that puzzle because it believes that they codify the pre-existing state of generally accepted medical practices. *Id.* Under this theory, the materials are relevant to each of the Defendants. The Defendants can challenge this theory on cross-examination, through the presentation of conflicting evidence, and in their closing arguments.

Second, Dr. McFarlane's comparison of this trial to that in *United States v. Georges* is inapposite. [R. 692 at 11-12.] The *Georges* court severed a defendant because she was "notably absent as a defendant in the conspiracy charges of the indictment." *Id.* (quoting 2:20-cr-157(2), 2021 WL 1616074, at *4 (S.D. Ohio Apr. 26, 2021)). That defendant faced a "single charge" compared to her co-defendant's fifteen charges. *Id.* The Court focused on the "serious discrepancy" between the charges and the anticipated evidence attributable to each defendant. *Id.*

Dr. McFarlane's inclusion in this trial is not comparable. She is charged with far more than a "single charge" and is a part of the charged conspiracy. [*See* R. 1.] Her claim that she "was absent from EHC for a large part of the alleged conspiracies" is overstated. The indictment alleges a conspiracy from 2013-2018; she was present for three of those five years. [*See* R. 1 at 7.] Dr. McFarlane is correct that testimony to date has referenced standards established after she left EHC. But the Government explains that Dr. Rasberry "identified several instances in which EHC operated differently than it did on paper." [R. 695 at 2.] Some of those instances—not providing primary care although the EHC sign indicated it was a family medicine practice, arbitrarily designating patients as receiving pain or addiction treatment to exceed the DATA waiver cap, a high patient volume, et cetera—apply to Dr. McFarlane's involvement in the conspiracy. *Id.* at 2-4. Accordingly, the jury has not heard "substantially more evidence" about the other Defendants. *Georges*, 2021 WL 1616074, at *4.

Finally, Dr. McFarlane takes specific issue with Dr. Rasberry's alleged application of the 2017 EHC manual to her treatment of a patient in 2015. [R. 692 at 6-7.] On cross examination, Mr. Gaines, counsel for Dr. McFarlane, asked Dr. Rasberry about his conclusion that Dr. McFarlane prescribed a high dose of klonopin to a patient in 2015. *Id.* at 35-36. Dr. Rasberry

4

then stated that this conclusion was based on "the record." *Id.* at 36. Mr. Gaines asked, "based on – at least based on the policy and procedure manual, correct?[,]" to which Dr. Rasberry responded, "based on the document that I was presented, it said it was a high dose." *Id.* Dr. Rasberry then defined that "the document that was presented was a patient visit day." *Id.* This line of questioning suggests that Dr. Rasberry concluded that Dr. McFarlane issued a high dose of klonopin based on his review of the patient file, not by applying the 2017 manual to that file.

Nevertheless, Dr. Rasberry did reference post-2016 materials "at length" in his testimony. *See id.* at 26. But as explained above, the Government is permitted to argue that certain policies reflect generally accepted practices before they were adopted. And the Government may present evidence showing the "scope of the entire conspiracy." *United States v. Mayes*, 512 F.2d 637, 645 (6th Cir. 1975). It is not limited to proving "only the actual involvement of each defendant charged." *Id.*

Dr. McFarlane can challenge the weight of the post-2016 materials to her conduct through cross-examination, the admission of contradictory evidence, and in closing arguments. A limiting instruction may also be appropriate. *See United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008). Ultimately, the jury is capable of sorting out this evidence and considering its application to the individual defendants. *Id*.

### III

Dr. McFarlane establishes no "compelling, specific, and actual prejudice" presented by a joint trial. *Id*. Accordingly, and the Court being sufficiently advised, Dr. McFarlane's Motion to Sever **[R. 692]** is **DENIED**.

This the 21st day of June, 2023.

Gregory F. Van Tatenhove
United States District Judge